## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANIEL PERALES, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PILOT TRAVEL CENTERS, LLC d/b/a PILOT FLYING J | **Case No. 1:21-cv-00434**<br>FED. R. CIV. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1.      Daniel Perales brings this lawsuit to recover unpaid overtime wages and other damages from Pilot Travel Centers, LLC d/b/a Pilot Flying J ("Pilot Flying J") under the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19, *et seq.*, and for unjust enrichment under New Mexico law.

2.      Pilot Flying J employs many drivers like Perales.

3.      Perales, like other Pilot Flying J drivers, was paid based on the loads he hauled without regard to the number of hours he worked.

4.      Perales regularly worked overtime for Pilot Flying J.

5.      But Pilot Flying J did not pay Perales overtime for the hours he worked in excess of 40 in a workweek.

6.      This class action seeks to recover the unpaid overtime wages and other damages owed to these workers under New Mexico law.

### JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

8.      This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

9.      This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

11.     Perales performed work for Pilot Flying J in this District.

PARTIES

12.     **Daniel Perales** is a natural person who is a resident and citizen of Texas.

13.     Perales worked for Pilot Flying J from October 2017 until March 2019.

14.     Perales represents a class of similarly situated workers under New Mexico law, pursuant to Federal Rule of Civil Procedure 23:

> **Current and former drivers employed by Pilot Travel Centers, LLC who performed any work in New Mexico and who were not paid overtime for hours worked over 40 in a workweek, in the past three years.**

15.     These workers are referred to throughout this Complaint as the "Putative Class Members."

16.     Pilot Travel Centers, LLC d/b/a Pilot Flying J ("Pilot Flying J") is a Delaware limited liability company.

17.     Pilot Flying J's headquarters and principal place of business is located in Tennessee.

18.     Pilot Flying J is a citizen of Delaware and Tennessee.

19.     Pilot Flying J conducts business in a systematic and continuous manner throughout New Mexico and this District.

20.    Pilot Flying J may be served by service upon its registered agent, **CT Corporation System, 206 S. Coronado Ave., Espanola, NM 87532-2792**, or by any other method authorized by law.

### FACTS

21.    Pilot Flying J operates travel centers across North America.

22.    Perales was employed by Pilot Flying J as a driver.

23.    Pilot Flying J paid Perales on a per load basis.

24.    Pilot Flying J paid Perales a percentage of every load that was hauled.

25.    Pilot Flying J did not pay Perales a salary.

26.    Perales normally worked more than 40 hours in a week.

27.    Perales estimates he usually worked 70 hours, or more, each week.

28.    Perales reported the hours he worked to Pilot Flying J on a regular basis.

29.    Perales's hours are reflected in Pilot Flying J's records.

30.    Pilot Flying J did not pay Perales or the Putative Class Members for all of their work time.

31.    Perales did not pay Perales or the Putative Class Members overtime for hours worked over 40 in a workweek.

32.    Of course, then, when they worked more than 40 hours in a week, Pilot Flying J did not pay Perales at 1.5x his regular rate for his overtime hours.

33.    Perales worked for Pilot Flying J in New Mexico.

34.    Pilot Flying J was aware of the overtime requirements of the NMMWA.

35.    Pilot Flying J knew Perales was working more than 40 hours per week.

36.    Pilot Flying J knew the Putative Class Members were working more than 40 hours per week.

37.    Pilot Flying J nonetheless failed to pay overtime to Perales and the Putative Class Members.

38.    These employees performed work that is primarily manual labor in nature.

39.    Perales and the Putative Class Members were not allowed to vary from the job duties that were predetermined for them.

40.    Truly, these workers have little or no discretion in how to do their job, or the jobs of others they work with.

41.    Even though Perales and the Putative Class Members perform very routine, technical, and manual labor job duties, Pilot Flying J uniformly failed to pay proper, or any, overtime to these workers.

### CLASS ACTION ALLEGATIONS

42.    Perales incorporates all other allegations.

43.    The illegal pay practices Pilot Flying J imposed on Perales were likewise imposed on the Putative Class Members.

44.    Numerous other individuals who worked with Perales were improperly classified as exempt, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the NMMWA.

45.    The classes are so numerous that joiner of all members is impracticable.

46.    Thus, Pilot Flying J imposed a uniform practice or policy on Perales and the Putative Class Members regardless of any individualized factors.

47.    Based on his experiences and tenure with Pilot Flying J, Perales is aware that Pilot Flying J's illegal practices were imposed on the Putative Class Members.

48.    Putative Class Members were all improperly classified as exempt from the NMMWA and not paid overtime when they worked in excess of 40 hours per week.

49.    Pilot Flying J's failure to pay wages and overtime compensation at the rates required by the NMMWA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

50.    Perales's experiences are therefore typical of the experiences of the Putative Class Members.

51.    Perales has no interest contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, Perales has an interest in obtaining the unpaid overtime wages owed under the law.

52.    A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

53.    Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Pilot Flying J will reap the unjust benefits of violating the NMMWA.

54.    Furthermore, even if some of the Putative Class Members could afford individual litigation against Pilot Flying J, it would be unduly burdensome to the judicial system.

55.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

56.     The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

(a)     Whether the Putative Class Members were improperly classified as exempt from the NMMWA;

(b)     Whether the Putative Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

(c)     Whether Pilot Flying J's pay scheme, without overtime pay regardless of the number of hours worked, violated the NMMWA;

(d)     Whether Pilot Flying J knowingly benefitted at the expense of the Putative Class Members; and

(e)     Whether allowing Pilot Flying J to retain the benefit it obtained at the expense of the Putative Class Members would be unjust.

57.     Perales's claims are typical of the Putative Class Members claims. Perales and the Putative Class Members have sustained damages arising out of Pilot Flying J's illegal and uniform pay policy.

58.     Perales knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

59.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

### First Cause of Action—Violations of the NMMWA

60.     Perales incorporates all other allegations.

61.     The conduct alleged in this Complaint violates the NMMWA.

62.     Pilot Flying J was and is an "employer" within the meaning of the NMMWA.

63.     At all relevant times, Pilot Flying J employed Perales and each other Putative Class Member as an "employee" within the meaning of the NMMWA.

64.     The NMMWA requires an employer like Pilot Flying J to pay overtime to all non-exempt employees.

65.     Perales and the other Putative Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

66.     Within the applicable limitations period, Pilot Flying J had a policy and practice of failing to pay proper overtime to the Putative Class Members for their hours worked in excess of 40 hours per week.

67.     As a result of Pilot Flying J's failure to pay proper overtime to Perales and the Putative Class Members for work performed in excess of 40 hours in a workweek, Defendants violated the NMMWA.

68.     Perales and the Putative Class Members are entitled to overtime wages under the NMMWA in an amount equal to 1.5 times their rates of pay, plus treble damages, attorney's fees, and costs. NMSA § 50-4-26.

69.     Since before Perales began working for Pilot Flying J until at least after he left, Pilot Flying J subjected Perales and the NMMWA class members to the illegal pay scheme at issue.

70.     The illegal pay scheme was Pilot Flying J's continual practice of paying class members through at least 2019.

71.     The illegal pay practices at issue were thus part of a continuing course of conduct.

72.     Pilot Flying J's continuing course of conduct regarding the pay practice at issue entitles Perales and the Putative Class Members to recover for all such violations, regardless of the date they occurred. NMSA § 50-4-32.

### SECOND CAUSE OF ACTION—UNJUST ENRICHMENT

73.     Perales incorporates all other allegations.

74.     Pilot Flying J's acts and omissions in denying proper overtime pay to Perales and the Putative Class Members was done knowingly.

75.     As a result of its unlawful acts and omissions, Pilot Flying J received substantial benefit in the form of financial compensation that rightfully belonged to Perales and the Putative Class Members.

76.     It would be unjust to allow Pilot Flying J to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Ker and the NMMWA class members the wages they were entitled to under the NMMWA.

77.     Pilot Flying J has been unjustly enriched by its unlawful acts and omissions.

### DAMAGES

78.     Pilot Flying J's acts and omissions, individually and collectively, caused Perales and the Putative Class Members to sustain legal damages.

79.     Perales and the Putative Class Members are entitled to overtime wages under the NMMWA in an amount equal to 1.5 times their rates of pay, plus treble damages, attorney's fees, and costs. NMSA § 50-4-26.

80.     Perales and the Putative Class Members are entitled to recover for Pilot Flying J's unjust enrichment, including restitution and penalties.

81.     Perales and the Putative Class Members are entitled to recover attorneys' fees and costs of court.

82.    Perales and the Putative Class Members are entitled to treble damages under the NMMWA.

83.    Perales and the Putative Class Members are entitled to exemplary damages on their unjust enrichment claim.

84.    Perales and the Putative Class Members are entitled to pre- and post-judgment interest at the maximum legal rates.

85.    A constructive trust should be imposed on Pilot Flying J, and the Court should sequester any benefits or money wrongfully received by Pilot Flying J at the expense of Perales and the Putative Class Members.

### RELIEF SOUGHT

86.    Wherefore, Perales prays for judgment against Pilot Flying J as follows:

(f)    For an order certifying Perales's claims as a Rule 23 class action, appointing Perales as a class representative, and his counsel as class counsel;

(g)    For an order finding Pilot Flying J liable for violations of the NMMWA with respect to Perales and the Putative Class Members;

(h)    For an order finding Pilot Flying J was unjustly enriched by its violations of the NMMWA with respect to Perales and the Putative Class Members;

(i)    For an order imposing a constructive trust on Pilot Flying J and sequestering the benefits and monies that it wrongfully obtained at the expense of Perales and the Putative Class Members;

(j)    For a judgment awarding all unpaid wages and liquidated damages to Perales and the Putative Class Members;

(k)    For an order awarding treble damages to Perales and the Putative Class Members;

(l)    For an order awarding restitution, penalties, and exemplary damages to Perales and the Putative Class Members;

(m)    For a judgment awarding Perales and the Putative Class Members their attorneys' fees, costs, and expenses of this action;

(n)    For a judgment awarding Perales and the Putative Class Members pre- and post-judgment interest at the highest rates allowed by law; and

(o)    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
D.N.M. Id. # 16-155
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**